THE PEOPLE OF THE STATE OF NEW YORK and BARNABAS OSBORN and JOSIAH ALBERTSON, JR., Plaintiffs, *v.* IRA B. TUTHILL, DAVID BILLARD and CHAUNCEY W. TUTHILL, Defendants.

Two things must concur to qualify a person to become a voter at an election held by an incorporated religious society, after its first election: 1. Stated attendance on divine worship in the church, congregation or society, for the term of one year previous to such election; and, 2. Contribution to the support of such church, &c.

Stated attendance must be interpreted to mean the personal presence of the voter statedly at the religious meetings of the society. The regular attendance of the wife or other member of the family is not sufficient.

Persons attending the religious meetings of the society but a few times in the course of a year, or only occasionally, though regular contributors to its support, are not voters within the meaning of the seventh section of the act for the incorporation of religious societies.

The contribution and support must be according to the usages and customs thereof; which implies that the contributions must be of a vital and substantial character. Per JOHNSON, J. *

An election is not to be set aside and declared void, merely because certain illegal votes were received, which did not change the result of the election.

THIS is an action of *quo warranto,* brought to try the title of the defendants to the office of trustees of the "Religious Society of Cutchogue, in Southold."

The complaint alleged that on the 7th day of March, 1801, the religious society of Cutchogue, in Southold, county of Suffolk, and State of New York, was duly incorporated, in pursuance of the act entitled "An act to enable all religious denominations in this State to appoint trustees, who shall be a body corporate for the purpose of taking care of the temporalities of their respective congregations, and for other purposes therein mentioned," passed April 6th, 1784; and six persons were then duly elected trustees of the temporalities of the society of Cutchogue, in Southold, and county of Suffolk, by which name, style and title it was declared in the certificate of incorporation that they and their successors should forever thereafter be called, and that the said corpora-

tion still exists. That on and previous to the 1st day of March, 1861, Ira B. Tuthill, David Billard, Barnabas Osborn, Oliver Corey and William Wickham were trustees of the said corporation and religious society; and that a meeting of the male members of the said corporation and religious society had been duly called and notified, and was held on the said last mentioned day, to elect three trustees thereof in place of the said Barnabas Osborn, Ira B. Tuthill and David Billard, whose terms of office as such trustees expired on the 7th day of March, 1861, the trustees so to be elected to hold their office for three years from the said last mentioned date; that at the said meeting, Ira Tuthill and Jacob H. Tuthill, two of the members of the said religious society, were chosen to preside at such election, and it was thereupon resolved to vote by ballot; that the whole number of ballots received and counted by the said presiding officers was thirty-seven, of which number twenty-one ballots contained the names of Ira B. Tuthill, David Billard and Chauncey W. Tuthill, and sixteen ballots contained the names of Barnabas Osborn, Josiah Albertson, Jr., and Luther Akerly, for trustees of the said religious society and corporation; that of those who voted for the said Ira B. Tuthill, David Billard and Chauncey W. Tuthill, and whose votes were received and counted and went to make up the said number of twenty-one, the following were challenged, viz.: Philip Tuthill and Ira B. Moore, on the ground that they did not contribute to the support of the said religious society, according to the usages and customs thereof; Silas H. Moore and William E. Gould, on the ground that they were not stated attendants upon divine worship in the said religious society, and did not contribute to the support of the said religious society according to the usages and customs thereof; and Platt T. Gould, on the ground that he did not contribute to the support of the said religious society according to the usages and customs thereof, and was not a member of the said religious society, but was a member of another religious society at Northville in said county; that the said grounds of challenge, respectively, were true, and that the said persons so challenged

were not members of the said religious society, nor entitled to vote at said election; that at the said election the following persons presented their ballots to said presiding officers and offered to vote for trustees of the said religious society, whose votes were challenged and were not received by the said presiding officers, on the sole ground that they had not been stated attendants upon divine worship in the said religious society for the last preceding year, viz.: William M. Betts, William O. Betts, Charles Betts, Alfred Smith, Benjamin P. Tuthill, Israel Davis and B. D. Carpenter.; and that at such election the said presiding officers publicly proclaimed to the meeting that it made no difference how long any person had been a member of the said religious society, nor how long he had been a stated attendant upon divine worship in the said religious society and had contributed to the support thereof according to its usages and customs, nor whether he had contributed to its support as aforesaid during the last preceding year, and the family of such person had statedly attended on divine worship in the said religious society for the last preceding year; that no person was entitled to vote nor would be permitted to vote at such elections, unless he had himself personally attended the meetings of the said religious society for divine worship the greater part of the time for the last preceding year, unless prevented by ill health.

And the plaintiffs averred that the said William M. Betts, Benjamin P. Tuthill and Alfred Smith have been members of the said religious society and pew holders in the church edifice thereof for more than twenty years, and the said B. D. Carpenter for more than ten years, — and during all these periods they have respectively contributed to the support of the said religious society according to the usages and customs thereof. And that they have respectively, during all the said times — they and their respective families — statedly attended on divine worship in the said religious society. That the said William O. Betts, Charles Betts and Israel Davis are, and for more than one year previous to the said election have been, stated attendants on divine worship in the said religious society, within the meaning of the statute in such

case made and provided, and pew holders in the church edifice thereof, contributing to the support of the said religious society according to the usages and customs thereof,— and that the said William M. Betts, William O. Betts, Charles Betts, Benjamin P. Tuthill, Alfred Smith, Israel Davis and B. D. Carpenter are neither of them members of any other religious society. That the said William M. Betts, William O. Betts, Charles Betts, Benjamin P. Tuthill, Alfred Smith and Israel Davis respectively intended to vote, and would have voted for, — and the ballots so offered by them contained the names of the said Barnabas Osborn, Josiah Albertson, Jr., and Luther Akerly, for trustees of the said religious society. That the plaintiffs do not know for whom the said B. D. Carpenter intended to vote, but they are informed and believe that he did not intend to vote for, nor did the said ballot so offered by him contain the names of the said Ira B. Tuthill, David Billard and Chauncey W. Tuthill, or either of them. That the plaintiffs believe that George Youngs, a member of the said religious society, offered to vote at such election, and presented his ballot to the said presiding officers, containing the names of the said Barnabas Osborn, Josiah Albertson, Jr., and Luther Akerly, for such trustees, and that his vote was not received or counted by the said presiding officers. That Isaac T. Moore offered to vote at such election, and presented his ballot to the said presiding officers, which the plaintiffs believed contained the names of the said Ira B. Tuthill, David Billard and Chauncey W. Tuthill, and the same was challenged. That while the said challenge was pending and inquiries were being made touching the qualifications of the said Isaac T. Moore, Ira Tuthill, one of said presiding officers, declared in a loud voice and with great vehemence that he was a legal voter, and directed him to put in his ballot, and the said Isaac T. Moore deposited his ballot with a great number of other ballots which had been received by the said presiding officers for each set of candidates and not distinguishable from them. That the person challenging such vote insisted upon his right to inquire into the alleged qualifications of the voter, and persisted in his inquiries, and

the said Isaac T. Moore thereupon took one of said ballots, so received by the said presiding officers, but whether the one which had been so deposited by him the plaintiffs are unable to state. And it being made to appear that the said Isaac T. Moore had not contributed to the support of the said religious society, he did not insist upon his claim to vote at such election, — and the said ballot, so taken by him, was not returned to the said presiding officers, nor received or counted by them. And the plaintiffs averred that the said presiding officers exhibited gross partiality by receiving the votes of all persons whom they supposed intended to vote for the said Ira B. Tuthill, David Billard and Chauncey W. Tuthill, whether challenged or not, — and by challenging upon their own motion, and refusing to receive, the votes of persons whose qualifications were far superior to some of those whose votes were received, when they supposed that such last mentioned persons intended to vote for the said Barnabas Osborn, Josiah Albertson, Jr., and Luther Akerly.

And the plaintiffs averred that if only legal votes had been received by the said presiding officers, and no legal votes had been rejected by them, — and if the said election had been properly conducted by the said presiding officers, — the said Barnabas Osborn, Josiah Albertson, Jr., and Luther Akerly would have received the greatest number of the votes at the said meeting, and would have been declared elected as such trustees of the said religious society. But that the said presiding officers unlawfully and wrongfully made their certificate, in writing, declaring that the said Ira B. Tuthill, David Billard and Chauncey W. Tuthill were elected trustees of the said religious society at such meeting, — and the said Ira B. Tuthill, David Billard and Chauncey W. Tuthill now claim to be trustees of the said religious society by virtue of such election, — and they assume to call meetings of the said trustees, and claim to be a majority of the said board of trustees of the said religious society, and pass resolutions as such board of trustees, — and as such trustees, they have collected and received the pew rents of the said religious society to the amount of about one hundred dollars, and

refuse to apply the same to the payment of the salary of the minister of the said religious society, to whom the same belongs and is due.   And that the said Ira B. Tuthill, David Billard and Chauncey W. Tuthill have usurped and unlawfully held, used and exercised, and still do unlawfully hold, use and exercise the office of trustees of the said religious society.   And that the said Barnabas Osborn, Josiah Albertson, Jr., and Luther Akerly, are rightfully entitled to the said office of trustees of the said religious society, and to all the rights, privileges and franchises thereof, — and have been so entitled since the said seventh day of March, 1861.

Wherefore the plaintiffs demanded that it might be adjudged, that the said Ira B. Tuthill, David Billard and Chauncey W. Tuthill, the defendants, have usurped and unlawfully held and exercised the said office of trustees of the temporalities of the religious society of Cutchogue, in Southold and county of Suffolk, — and that they still do unlawfully hold and exercise the same, — and that they may be ousted and removed therefrom., And that it may be further adjudged, that the said Barnabas Osborn, Josiah Albertson, Jr., and Luther Akerly, are entitled to the said office, — and have been so entitled since the said 7th day of March, 1861.

The defendants, in their answer, admitted the allegations of the complaint as to the incorporation of the religious society, &c.   But they stated, in addition to such allegations, that the church, in connection with said religious society of Cutchogue, is Presbyterian in its form of government, and Ira Tuthill and Jacob H. Tuthill, who presided at the annual meeting on the 1st of March, 1861, were both elders of the said church, and the said Ira Tuthill was a deacon of the said church, and the only deacon that was present at the said meeting. And they alleged that Philip W. Tuthill, Ira B. Moore, Silas H. Moore, William E. Gould and Platt T. Gould were each and all members of the same religious society, and legal voters at the said meeting.   That the said Philip W. Tuthill is the son and a member of the family of Ira Tuthill, who is a pew holder of the said religious society.   He is also, and has been

for the past year, chorister of the said society, and leads the choir without compensation, although the society had before paid fifty dollars a year for like services. That the said Ira B. Moore is a son and a member of the family of Calvin Moore, who is a member and pew holder of the said society. He also during the past year, up to November, 1860, had the care and charge of the meeting house. That the said Silas H. Moore is also a son of the said Calvin Moore, and lived with him a part of the year. That he was a stated attendant on divine worship in the said society, and contributed at the collections and occasional subscriptions in behalf of the said society, but not as a yearly subscriber or pew holder distinct from his father. That William E. Gould is a son of Platt T. Gould, who is and was a member of the said religious society, a pew holder, a contributor, and a stated attendant upon divine worship with the said society, and he, the said son, is a pew holder with his father, also an occasional attendant upon divine worship in the said society, and a contributor. That the said Platt T. Gould is a member of the Congregational church of Northville, some five or six miles distant from his residence, but he is not a stated worshipper with the said society of Northville, and that it is not according to the usage and custom of the said religious society of Cutchogue, for young men who are members of said society, and who live with their fathers who are pew holders, to become yearly subscribers or pew holders for the support of public worship distinct from their parents. That William M. Betts, William O. Betts, Charles Betts, Alfred Smith, Benjamin P. Tuthill, Israel Davis and Benjamin D. Carpenter were not legal voters, nor was either of them a legal voter at the said annual meeting, and the votes of each and all of them were properly challenged and rejected. That the said William M. Betts, although he has for many years hired a pew, yet he has not for many years attended divine worship with the said society, except perhaps a funeral, or half a day at the president's fast, nor do any of his family attend divine worship except his daughters. That the said William O. Betts was not, and had not been during the past

year a pew holder or a contributor to the support of the said society, and had not been an attendant upon divine worship in the said society at all. That the said Charles Betts was not, and had not been for the past year a pew holder or contributor to the support of the said society, or an attendant on divine worship therein. That the said Benjamin D. Carpenter was a pew holder, but he was not and had not been for five years an attendant upon divine worship in the said society at all. That the said Alfred Smith was a pew holder, but was not, and had not been during the past year an attendant at all on divine worship in the said society, except that he went to church three Sabbaths immediately before election. That the said Benjamin P. Tuthill was not, and for the past year had not been a stated attendant on divine worship in the said society; that he had attended worship only occasionally, and at most not more than three or four times during the year. That the said Israel Davis was not, and for the past year had not been a stated attendant on divine worship in the said society; and that he attended divine worship only occasionally, and a very few times during the year. That George Youngs, named in the complaint, was not a legal voter; that he for the past year was not, and had not been a stated attendant on divine worship in the said society, but had attended worship principally at Mattetuck. That Isaac T. Moore was a son of the said Calvin Moore and a member of his family, and was and for the past year had been a stated attendant on divine worship in the said society, and at the said election he put in a vote for the defendants as trustees, and afterwards, in dissatisfaction with the manner in which he was opposed as a voter, he withdrew the same ballot he put in, as was believed; but the ballot withdrawn by him certainly had on it the names of the defendants for trustees, and no other names. That the presiding officers of the said meeting had the act to provide for the incorporation of religious societies at such meeting, and that, from the said act, they clearly, plainly and correctly announced the qualifications required to become a voter at the meeting; that their decisions upon challenges of

voters were just and impartial, and their rejection and admission of votes were in every case correct and according to law, except perhaps the case of William E. Gould, who was supposed to have been a stated worshipper; and that the meeting was conducted orderly and properly, &c. That no one having a legal right to vote was deterred or prevented from voting or offering to vote, by anything said or done by the said presiding officers, or by any person or persons who opposed the construction of the law contended for by the relators and their friends. That no illegal vote was received, except the said William E. Gould, or legal vote rejected; and that the defendants denied each and every allegation of the said complaint inconsistent with the facts stated in this paragraph of the answer. That they received from the said presiding officers a certificate of their election as trustees of the said society for three years, from the 7th day of March, 1861; and they have since claimed, and still claim to be lawful trustees of the said religious society; and they have, as such trustees, received· pew rents to the amount of seventy-three 40-100 dollars only; and they have performed other duties devolving upon the trustees of the said society; and they denied from their best knowledge, information and belief, that they have usurped or unlawfully held or exercised the said office of trustees.

The action was tried at the Suffolk Circuit, in April, 1862, before Justice Brown, without a jury.

The main questions on the trial was, whether six persons, who hired pews, or paid money for seats, but attended divine worship only occasionally, or not at all, were lawful voters for trustees. Philip Tuthill was chorister, and as such, performed without compensation, the services for which they had before been paying $50 a year. He was also a single man; lived in the family of his father, who was an elder of the church and hired a pew. Ira B. Moore was sexton, and as such, was paid for his services; but he swept the house without compensation. He also was single, and lived with his father, who was a member of the church and hired a pew. The judge held that the services of Philip Tuthill and Ira

B. Moore were useful and valuable contributions, and entitled them to the same rights and privileges as those possessed by persons who rendered their support in the shape of money.

The judge found, as a matter of fact, that Alfred Smith, Benjamin P. Tuthill, William M. Betts, William O. Betts, Benjamin D. Carpenter, Eugene Goldsmith and Israel Davis were not stated attendants upon divine worship in said society for one year before the time of the election, and decided, as matter of law, that they were not entitled to vote, and that their votes were properly rejected. He also found as matter of fact, that Philip Tuthill and Ira B. Moore were stated attendants upon divine worship in said society, and had contributed to its support for one year before the time of the election, and decided as matter of law, that they were entled to vote, and that their votes were properly received. The judge also decided as matter of law, that the evidence as to the qualifications of Platt T. Gould, William E. Gould and Silas Henry Moore was contradictory to some extent. The judge also decided as a matter of law, that if the votes of the said Platt T. Gould, William E. Gould and Silas H. Moore were rejected as unqualified, it would not change the result. And the said judge also decided as matter of law, that the said defendants had not, nor had any or either of them usurped the said office of trustees of the said religious society, and that judgment should be entered in their favor. To which several decisions the plaintiffs duly excepted. They also excepted to the said decision as far as it related to Chauncey W. Tuthill.

The plaintiffs appealed to the General Term, which reversed the judgment, and granted a new trial.

From that judgment the defendants appealed to this court.

*George Miller,* for the appellants.

*William Wickham,* for the respondents.

JOHNSON, J. By the seventh section of the act for the incorporation of religious societies, it is provided, that no person shall be entitled to vote at any election held by any

society incorporated under the act, after the first election, "until he shall have been a stated attendant on divine worship in the said congregation or society, at least one year before such election, and shall have contributed to the support of said church, congregation or society, according to the usages and customs thereof." Two things, it will be seen, must concur to qualify a person to become a voter at any such election; stated attendance on divine worship in the church, congregation, or society for the term of at least one year previous to the election, and contribution to the support of such church, congregation or society.

The first question to be determined is, what constitutes stated attendance on divine worship? It is obviously something more than mere attendance. It is attendance of a particular nature or character. The term *stated* is used to characterize the nature or kind of attendance which shall confer one part of the qualification or right. "Stated," as defined by Webster, is "settled, established, regular, occurring at regular times, not occasional; as stated hours of business." A stated attendant is one who attends statedly, which is defined to be "regularly at certain times, not occasionally." The distinction between an attendant of that character and one whose attendance is irregular, and at uncertain periods, or occasional only, is plain and well understood. Indeed it is too plain and obvious to be aided much by attempts at exact description or definition. Regular attendance, at the stated times for worship, as established in the church, or society or congregation, as distinguishable from irregular or occasional attendance, is what is necessary. This attendance must be personal, and cannot be supplied by another. The regular attendance of the wife, or other member of the family, will not answer. And no amount of contribution to the support of the church or society can be accepted in lieu of this personal presence statedly. It is plain enough that the persons whose votes were challenged and rejected at the election in question were not such attendants as the statute requires to constitute legal voters. For the year preceding the election, they had been, as clearly appears from the evi-

dence, irregular and occasional attendants, at most. Most of them seem to have been regular contributors to the support of the society for many years, but not regular attendants on divine worship for the year preceding. They had one qualification, but not both, and their votes were properly rejected. It is unnecessary to determine in this case how often a person must attend at the stated periods for worship, in the course of the year, to be a stated attendant. It is enough to say, that persons who attend a few times only in the course of the year, as compared with the number of stated times for worship within such year, and at irregular and uncertain intervals, are clearly not stated attendants.

The next question is, in what manner a person must contribute to the support of such church or society, in order to be a qualified voter. He must contribute to its support according to the usages and customs thereof. This undoubtedly means substantial and vital aid and support. Personal attendance and countenance might in one sense contribute to the support of such an organization. But that is not the contribution intended by this provision of the statute. The statute means the necessary, material support, without which the organization cannot exercise its ordinary functions and perform its customary and appropriate duties and ministrations. It means the parting with, and contribution of, a portion of one's worldly substance, in the usual and customary way, to be used in meeting and defraying the expenses incurred by the church, congregation, or society in the support of public and divine worship. Merely attending as a worshipper, or taking a leading or a subordinate part, in the exercises, or rendering some special gratuitous service, will not answer this requirement of the statute. If the service rendered, however, is such as is usually and customarily hired and paid for by such organizations, and is by some understanding or agreement express or implied, rendered as an equivalent, or in lieu of a contribution in money or property, such service would undoubtedly be a contribution to the support of the church, society, or congregation within the sense and meaning of the statute. The test is, does the contri-

bution, whatever it may be, go immediately and directly to the support of the public worship maintained by the church, congregation or society. In this view contributions made, not for the support and maintenance of the religious incorporation, but for the support or promotion of some other object or enterprise in which the church, congregation or society may be engaged, however valuable or praiseworthy, as Sunday schools, missions, and the like, will not be sufficient.

The obvious and sensible policy of the statute was to secure the government, and control of the temporalities of each of the religious incorporations formed under it, to such of its members or supporters as should manifest their attachment to its tenets and doctrines, and their interest in its success and usefulness by their habitual presence and countenance, and their habitual contributions to its support. It is quite plain, too, that upon no other principle or policy could these corporate bodies, depending as they all do upon mere voluntary contributions for their maintenance and support, be permanently kept up, their existence continued, and their usefulness maintained. According to these views, the General Term was right in holding that Philip W. Tuthill and Ira B. Moore were not legal voters, neither of them having, upon the undisputed evidence in the case, contributed to the support of that society for the previous year, according to any usage or custom thereof. But this being so, I do not understand upon what ground the judgment of the Special Term could have been reversed. Excluding their votes could not have changed the result. The result would not be affected, unless there were other illegal votes also received which should have been rejected. Whether there were others or not has not been determined, either by the Special or General Term. There appears to have been thirty-seven votes cast in all, and the defendants received twenty-one of these. So that rejecting these two votes the defendants will still have a clear majority, and were legally elected. It is not found, and does not appear that any other illegal votes were received. No fact is found in regard to the two votes, which were not passed upon by the judge who tried the cause, and we cannot

say they were illegal. Rejecting, therefore, the two votes which were held to have been improperly received by the General Term, the incumbents have still a majority of presumptively legal votes. The election is not to be set aside and declared void, merely because two votes were received from persons not entitled to vote, if there was still a majority of legal votes for the ticket declared to be elected. I am of the opinion, therefore, that the judgment of the General Term should be reversed, and that of the Special Term affirmed.

WRIGHT, MULLIN and HOGEBOOM, JJ., were for reversal; INGRAHAM, J., was also for reversal, but solely on the ground that the two illegal votes made no difference in the result; DAVIES, J., and DENIO, Ch. J., were in favor of affirmance.

Judgment reversed.