(57 App. Div. 252.)

### SMITH v. BOWERS et al.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

1. RELIGIOUS SOCIETIES—EXPULSION OF MEMBER—REVIEW.

> Where a member of a religious body brought an action against the corporation and its trustees, who exercised control over its property, to determine the use to which certain church property should be put, and claimed reinstatement as a member of such religious body, neither the corporation, nor the trustees as such, having taken part in striking his name from the roll, the action of the religious body thereon will not be reviewed, since it was not a party to the suit, and no property rights of plaintiff were affected.

2. SAME — LOSS OF MEMBERSHIP — RIGHT TO BRING ACTION WITH RESPECT TO PROPERTY.

> A member of a religious corporation, whose name had been dropped from the roll of a religious body, and who had ceased to be an attendant at its meetings for more than a year, was no longer a member of such religious corporation, and hence not entitled to maintain an action to regulate the use of property by such corporation, under Laws 1895, c. 723, § 5 (amended by Laws 1896, c. 336), defining the general powers and duties of trustees of religious corporations.

Appeal from trial term.

Action by Monroe F. Smith against Robert Bowers and others. From a judgment dismissing his complaint, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Homer Weston, for appellant.
Ceylon H. Lewis and Will. B. Crowley, for respondents.

MERWIN, J. The controversy in this case is over the use to be made of certain church property the title of which is in the corporation defendant the Wesleyan Methodist Church of Syracuse, a religious corporation incorporated in August, 1845, under the act of 1813 (chapter 60, Laws 1813). The religious association that preceded the corporation was formed in May, 1842. That association, in June, 1843,

co-operated with a large number of other similar associations having
similar religious views, forming a convention at which a religious
denomination was organized called the "Wesleyan Methodist Connec-
tion of America." By the discipline and rules then adopted, provision
was made for the holding of annual conferences to be composed of
delegates from the local or constituent churches within certain speci-
fied localities, and a general conference, to be composed of delegates.
from the different annual conferences. The boundaries of the annual
conferences were fixed at the convention in 1843, and thereafter could
be changed by the general conference, which was to be held first in
1844, and thereafter once in four years. It was the lawmaking power
of the denomination. On the 10th of January, 1846, a conveyance was
made to the corporation the Wesleyan Methodist Church of Syracuse
of a lot of land in the then village of Syracuse. Upon this lot a church
edifice was soon afterwards erected, in which religious services have
been since maintained. The property has been, and still is, in the
legal control of the corporation, of which the individual defendants
except Knappenberger were the trustees at the time of the commence-
ment of this action in July, 1896. There seems to be no question as to
the character of the use of the church, or as to the regularity of the
religious body there maintaining religious services, until the year 1890.
Up to that time beyond question the church there worshipping had
been a constituent member in good standing of the denomination or-
ganized in 1843. In 1890 there was trouble over the action or atti-
tude of the general conference on the subject of secret societies. Prior
to 1879 the rule of the denomination as adopted by the general con-
ference was that its ministers or members should not join or hold fel-
lowship with secret oath-bound societies. In 1879 the general con-
ference adopted the following rule: "We will on no account tolerate
our ministers or members in joining or holding fellowship with secret
societies, as, in the judgment of the Wesleyan Methodist Connection,
it is inconsistent with our duties to God to hold such connection."
In view of this rule, the Syracuse church became apprehensive that
they would be called upon to dismiss from their church persons who
were members of the organization called the "Grand Army of the Re-
public," and who in all other respects were in good standing. They
took the ground that the new test should not be applied to those al-
ready members, and that the general conference had no jurisdiction
to make such tests retroactive. There is in the case some ground for
the belief that it was not so intended at the time of its adoption.
Later there seems to have been an intention or desire on the part of
the Syracuse annual conference to make it so applicable. This culmi-
nated at the annual conference in the spring of 1890, when that con-
ference refused to receive a delegate from the Syracuse church by rea-
son of his refusal to indorse the change in the discipline on the subject
of secret societies. Upon the report from this delegate, the Syracuse
church, on the 14th of April, 1890, at a church meeting, adopted resolu-
tions, with but one dissenting vote, "that we, the Wesleyan Methodist
Church of Syracuse, N. Y., hereby sever all connection with the Syra-
cuse, N. Y., Annual Conference"; "that our discipline shall be the
discipline adopted by the general conference of 1875, and that section

twenty-two shall read 'oath-bound secret societies.' " The church at that time contained about 100 members. Since that time religious services have been maintained in the church edifice substantially in the same form and with the same rites and ceremonies as before. It has largely increased in members, and its affairs have been managed as a Wesleyan Methodist church, but the religious society there worshipping has not sent any delegate to the annual conference, or made to it any reports. No action has been taken thereon by the general conference. The discipline of the denomination provided for the trial of local churches by the annual conference. No such trial has been had of the local church in this case. The plaintiff became a member of the Syracuse church in 1875. He opposed the resolution severing connection with the annual conference. He, however, attended worship at the church until a short time before April, 1892, when he and four or five others commenced to hold meetings in another place, formed an organization, and elected a delegate to the annual conference. Thereupon the church body worshipping in the church building, on the 4th April, 1892, after hearing the plaintiff, passed a resolution to the effect that, as the plaintiff and his associates had formed a separate church, they had ceased to be members of the Wesleyan Methodist Church of Syracuse, and their names should be stricken from the roll. Since then the plaintiff has not attended the services at the church building.

The plaintiff, as a part of his desired relief in this case, claims that he should be reinstated as a member, or declared to be still a member of the Syracuse church. Neither the corporation defendant nor the trustees as such took part in the action of the religious association striking the name of plaintiff from the roll. The religious body is not a party to this action, and its action we cannot here review, at least unless some property right of the plaintiff is involved or affected by such action. The main question in the case upon the merits relates to the defendant Knappenberger. The plaintiff claims that the corporation and its trustees should be restrained from allowing him to occupy the church edifice, or conduct meetings there as pastor. Mr. Knappenberger became pastor of the Syracuse church in the spring of 1889, and still acts as such. He had previously been a member of the Allegheny conference, and received from it a transfer to the Syracuse conference. In the spring of 1890, for the purpose of avoiding an investigation by the Syracuse conference as to his conduct in reference to the matter of secret societies, he applied for and obtained a withdrawal from the Syracuse conference. This disconnected him from that conference. He joined in the action of his church severing its connection from that conference. He continued to be their pastor, but made no reports to the annual conference, as required by the discipline of the denomination. He seems to have publicly announced that his church was independent, having no organic connection with any denomination. By the discipline the annual conference had charge of all the ministers and churches within its bounds, and in spirit, if not in terms, required the ministers to become members of the conference. This situation admits of the assertion that Mr. Knappenberger withdrew from the conference, re-

pudiated its jurisdiction and supervision, and declared his independ-ence. From the undisputed facts it is a little difficult to avoid the conclusion that the religious affairs of the church are not being administered by Mr. Knappenberger in accordance with the rules of the ecclesiastical governing body. The trial court was of the opinion that a case was not made calling for the interposition of the equitable powers of the court, and also that the plaintiff had ceased to have any interest in the subject-matter of the action.

The authority to bring an action of this kind is derived from section 5 of the religious corporations law (chapter 723, Laws 1895), as amended by chapter 336 of the Laws of 1896. That section is as follows:

"Sec. 5. General powers and duties of trustees of religious corporations.— The trustees of every religious corporation shall have the custody and control of all the temporalities and property, real or personal, belonging to the corporation and of the revenues therefrom, and shall administer the same in accordance with the discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the corporation is connected, and with the provisions of law relating thereto, for the support and maintenance of the corporation, or provided the members of the corporation at a meeting thereof shall so authorize, of some religious, charitable, benevolent, or educational object conducted by said corporation or in connection with it, or with such denomination, and they shall not use such property or revenues for any other purpose or divert the same from such uses. By-laws duly adopted at a meeting of the members of the corporation shall control the action of its trustees. But this section does not give to the trustees of an incorporated church any control over the calling, settlement, dismissal or removal of its minister, or the fixing of his salary; or any power to fix or change the times, nature or order of the public or social worship of such church, except when they are also the spiritual officers of such church."

The plaintiff, at the time his name was dropped from the roll, had ceased to be a stated attendant on divine worship at the only place under the control of the corporation and the usual place of meeting of the religious body, and never thereafter resumed his attendance there. Having ceased to be a stated attendant, and so remaining for more than a year, he ceased to be a voter at the election of trustees (section 7, Act 1813; People v. Tuthill, 31 N. Y. 550), and ceased to be a member of the corporation (Wyatt v. Benson, 23 Barb. 327; Cammeyer v. Lutheran Churches, 2 Sandf. Ch. 186, 214; Madison Ave. Baptist Church v. Baptist Church in Olive St., 46 N. Y. 131, 136). The plaintiff's right to vote was not, under the statute, affected by the question whether or not he continued to be a member of the religious body. The action of the religious body, therefore, in dropping his name from their roll, did not prevent him from continuing to be or becoming a member of the corporation by satisfying the required test. I see no escape from the conclusion that the plaintiff, having ceased to be a member of the corporation, is not in such a position that he can, under the statute of 1895, maintain an action to regulate the use of the property. For this reason the judgment should, I think, be affirmed.

Judgment affirmed, with costs. All concur; EDWARDS, J., in result.