TAYLOR *against* THE GOVERNOR.

APPLICATION for a *Mandamus.*

The Supreme Court has the power to issue writs of *mandamus.* The party applying for this writ must show that he has a specific legal right, and no other adequate specific legal remedy.

A collector or holder of public moneys who was in default for moneys collected at the time of the adoption of the Constitution, at the time of his election to another or the same office, and at the time of his application for his commission, is not entitled to his commission.

A collector or holder of public moneys who was in default to the Territory at the adoption of the Constitution, became in law and by the schedule to the Constitution a defaulter to the State, and all his liability is transferred to the State.

No person had any natural, legal, or vested right to the office of Sheriff till it was created by the Constitution.

The right to the office is given upon the express condition that the party demanding it is neither a holder or collector of public money which he has failed to account for and pay over, and for which he is liable.

That condition not having been complied with, no legal, constitutional, or natural right to the office vests by an election to it. Therefore the clause in the Constitution cannot be retrospective in this case.

An *ex post facto* law declares an offence to be punishable in a manner that it was not punishable at the time it was committed, and relates exclusively to criminal proceedings.

The provision in the State Constitution that no holder or collector of the public money shall be eligible to any office of trust or profit till he has paid over and accounted, &c., is not repugnant to or in violation of the Constitution of the United States.

LACY, *Judge*, delivered the opinion of the Court: This case as it stands at present on the record is a motion supported by a petition, affidavit, and other exhibits filed with the clerk, requiring the Governor of the State to show cause why a peremptory mandamus should not issue directing him to deliver to *John K. Taylor*, his commission as Sheriff for the county of Pulaski.

LITTLE
ROCK,
Jan'y 1837.

TAYLOR
vs.
THE GOV'R.

The petition states that the applicant received a majority of all the votes for the office of Sheriff for the county of Pulaski, on the first Monday of August last, and that the clerk of the county court issued him a certificate of election. That on 14th October, 1836, he demanded his commission of the Governor, and on the 15th day of October, 1836, the Governor refused to deliver it upon the ground that he was ineligible to the office. A commission to the applicant, as Sheriff of the county of Pulaski, signed by the Governor of the Territory, bearing date 23d December, 1835, and on the back of it an endorsement entered, showing that he took the oaths of office on the 28th January, 1836, was then read. The certificates of the county court and Auditor were also introduced as evidence. That of the Auditor is in the following words:

"AUDITOR'S OFFICE, *Little Rock, Ark.*
October 30th, 1836.

I hereby certify that from the books of this office, *John K. Taylor*, Sheriff of Pulaski county in 1834, stands charged for revenue due the Territory of Arkansas, for the year 1833, with the sum of $522 33, exclusive of 20 per cent. thereon, which is to be added for delinquencies. And that for the year 1835, the said *John K. Taylor* stands charged with $69 40, exclusive of 20 per cent. thereon, which is to be added for delinquencies. The above charges certified, are the amounts which appear now to be due from the said *John K. Taylor*.

ELIAS N. CONWAY, *Auditor*."

The petition alleges that as the applicant has till the first Monday in December, in every year, to account for and pay over the public money, and that time not having intervened since the adoption of the Constitution, he cannot be rendered ineligible. It denies that any default except that which may have arisen since the adoption of the Constitution, can produce a disqualification. It states that he has held and still holds public money in his hands as Sheriff and Tax Collector, but it denies that any default in not accounting for and paying over public money previous to the adoption of the Constitution can create a disqualification under the Constitution.

These are all the material facts and points that are necessarily involved in the decision, and they present questions of no ordinary interest or magnitude. The court has given them a careful and mature examination and reflection, and the result of their research and investigation and the reasons and principles on which they are

founded is now submitted.   The first inquiry is, has the Supreme
Court the power to issue a mandamus?   That it has, there can be no
doubt—for the Constitution gives it *in express terms*.   See *article 6,*
*section* 2.   In England a mandamus is a high prerogative writ, be-
longing generally, if not exclusively, to the Court of King's Bench,
and is used principally to enforce the performance of public rights or
duties.   Under our government it is a constitutional writ secured to
the citizen.   The nature of the writ and the remedy it affords, and
to whom it may be properly directed, will be found fully examined in
3 *Blackstone's Commentaries,* page 110;  *3rd Burrows Reports,* 1266;
1*st Peters' Condensed Reports, Marbury* vs. *Madison,* 266.   That a
party applying for the writ must show that he has a specific legal
right, and no other adequate specific legal remedy, is a doctrine so
universally admitted and established that it is deemed unnecessary to
say any thing more upon this branch of the subject than to refer to
the authorities.   See 1*st Strange,* 513;  3*d Term Reports,* 648; 8*th
East,* 213; 3*d Burrows,* 1236, and *Chitty's Practice* 787; *Cowper* 378.

This enquiry brings the Court to the main question in the case, and
one upon which it must turn.

Is the applicant eligible to the office of Sheriff, or has he a legal
vested right to the commission?

If he is eligible by the constitution, he is entitled to the commis-
sion, for that is but the evidence and authority to exercise the duties
of the office.   All the evidence in the case was introduced by him-
self, and whatever facts or presumptions it may establish, he is bound
by—for the law will not permit him to object to his own proof, which
is uncontradicted and of his own showing.   The applicant claims the
right to the commission under the constitution, and by virtue of his
certificate of election.   The language of the constitution is as follows:
" The qualified voters of each county shall elect one Sheriff, one Cor-
"oner, one Treasurer, and one County Surveyor, for the term of two
"years.   They shall be commissioned by the Governor, reside in their
"respective counties during their continuance in office, and be disqual-
" ified from the office a second time if it should appear that they, or
" either of them, are in default for any moneys collected by virtue of
"their respective offices."   Under this provision and the second sec-
tion of the schedule appointing the time for holding the general
elections, he claims to be constitutionally eligible to the office of
Sheriff and legally elected to fill it.   On the part of the Governor it

is said that he is expressly disqualified by the constitution from holding any office of profit or trust. The following are the words of the constitution:

"No person who now is or shall be hereafter a collector or holder "of public money, nor any assistant or deputy of such holder or " collector of public money, shall be eligible to a seat in either house " of the General Assembly, nor to any office of profit or trust, until he " shall have accounted for and paid over all sums for which he " may have been liable."

In order to render the applicant ineligible, it must appear,

*First,* That he is a holder and collector of public money within the meaning of the constitution.

*Secondly,* That he has failed to account for and pay over all such sums for which he may have been liable at the time of his election.

In the present cause do the facts and legal presumption warrant these conclusions?

That he was a collector and holder of public money is expressly admitted in his petition. The Auditor's certificate establishes it, and his commission as Sheriff for the county of Pulaski, which continued in force until it was suspended by the authority of the State, and his official acts under it in the exercise of his duties, up to the time of his election, unquestionably prove that he was a collector and holder of public money, both before and after the adoption of the constitution, within the meaning of that instrument. See *Schedule.* It remains to be seen whether he has accounted for and paid over all sums for which he may have been liable at the time of the adoption of the constitution or at the time of his election, and the time of the demand and refusal of his commission, or at the time of filing his petition.

If he was still in default at all those periods of time, it is clear he can have no right to demand the office or the commission.

On the 30th October, 1836, the applicant stood charged by the Auditor's books with having failed to account for and pay over all or a part of the sums for the year 1834 and the year 1835, for which he was then liable to the Territory. This fact shows conclusively that he did not account for and pay over into the territorial treasury the public money for which he was liable, within the time prescribed by law, nor did he ever afterwards make payment to the territorial government so long as it continued its legal existence. The petition admits in substance, if not in direct words, this fact. It says he has

held and still holds public moneys in his hands, as Sheriff and Tax collector, belonging to the Territory; and the applicant seems to stake his case wholly upon the ground that no default to the territorial government can render him ineligible.   The letter of the Governor charges him with being in default, and states that as the reason for withholding his commission.   He does not show to the Court by competent and satisfactory proof (and if the facts had warranted it he surely could have done it) that the charges exhibited by the Auditor are erroneous, and that the Governor's letter was untrue.   He was certainly, then, a defaulter to the territorial government at the time of the adoption of the constitution, and if that be the case he is rendered ineligible, by its plain and literal meaning, to any office of profit or trust.   If it be true, as is manifest from the whole of the evidence, that the applicant was a defaulter at the time of the adoption of the constitution, then as the schedule transfers and passes over all the rights, contracts, and claims, belonging to the territory, to the State, it necessarily follows that the applicant is also a defaulter to the State; and having failed to account for and pay over all the sums of the public money for which he was liable, the constitution declares he is ineligible.   See *Schedule, section* 1 and 4; *article* 4, *section* 11. Independently of this provision it is a doctrine of public law as well as of natural justice. that states neither lose any of their rights nor are discharged from any of their obligations by a change in their form of civil government.   See *Federalist, Grotius, Rutherforth's Institutes.*   The liabilities of the applicant as a defaulter, accrued under the Territory, were in full force at the adoption of the constitution and at every subsequent period of time from that moment to the present; so far at least as the Court are able to judge from the facts before them.   It is not pretended that he has ever accounted for and paid over to the State the several sums for which he may be liable.   The Auditor's certificate shows that upon the 30th of October, 1836, he was indebted to the State at the time, in the amount charged.   The Governor's letter is also evidence of the same fact, and his own admissions virtually if not expressly prove it.   He was then a collector and holder of public money which he had failed to account for and pay over within the time prescribed by law, first to the Territory and afterwards to the State, and for which he was still liable at the time of the adoption of the constitution, and at the time of his election, and at the time of the demand and refusal of the Governor to issue his

D

LITTLE
ROCK,
Jan'y 1837.

TAYLOR
vs.
THE GOV'R.

commission, and at the time of his filing his petition.   The clause of
the constitution disqualifying the applicant is plain and significant, and
admits of but one interpretation.   It has been already shown that he
was a defaulter to the Territory at the time of the adoption of the
constitution, and by that instrument all his liability was transferred to
the State: consequently he has been a defaulter to the State ever
since that period.   The words "*who now is*" apply to him, and dis-
qualify him at the time of the adoption of the constitution; and the
words "*should be hereafter*" also apply to him and disqualify him at
the time of his election, and at the time of the demand and refusal
of his commission.   Consequently he falls within the plain and literal
import of the constitution, and is ineligible to any office of profit or
trust.   If the Court are correct in this view of the subject there is an
end of the question; but that the cause may be freed from all apparent
difficulty, they will in a brief manner notice the position taken and
relied on in support of the motion.   It is contended that any con-
struction or interpretation given to the constitution whereby the appli-
cant is deprived of the office of Sheriff, makes it act retrospectively,
or makes it an *ex post facto* law.   The error in this argument con-
sists in the manner of stating the question.   It takes that for granted
which in the nature of things cannot be, and which in point of fact is
wholly untrue.   It assumes the position that the applicant, *John K.
Taylor*, had a legal vested right to the office, when his right, by his
own showing, (if he had any) is exclusively conventional and wholly
constitutional.   What legal, vested, or inherent right had he or any
other citizen to the office of Sheriff before the formation and adoption
of the constitution?   The office had no natural or legal existence prior
to that time.   The constitution created it and gave it form and being.
As the applicant then claims his right under the constitution, must he
not submit to all the conditions, restrictions, and limitations it imposes?
The right to the office is given upon the express condition that the
party who demands it is neither a collector nor holder of public money
which he has failed to account for and pay over, and for which he may
have been liable.   The condition in the present instance not being
complied with, no legal, constitutional, or even natural right, can vest.
Can it be retrospective in its operation when it divests the applicant
of no antecedent right acquired by law, nor does it disfranchise him
of any privilege?

    The office of Sheriff is a  public trust or agency, and it never be-

comes a right till the individual who claims it shows that he is consti-
tutionally eligible.　In the present case the applicant claiming a pre-
tended right under the constitution, clearly demonstrates (within the
meaning of the instrument) that he is a defaulter, and hence he falls
within its disqualification, and has no right to demand the office.

The applicant has neither been dispossessed of his freehold nor in
any manner deprived of his rights, privileges, or property, nor has he
been denied the law of the land or judgment of his PEERS, or the
freedom or equality of elections.　All these privileges he possesses in
as ample a manner and in as full a degree as any other citizen.　The
constitution simply withholds from him public trust which depended
upon his own volition or will, provided he complied with the condition
annexed to the office.　An *ex post facto* law declares that to be pun-
ishable in a manner that it was not punishable at the time it was com-
mitted, and relates exclusively to criminal proceedings.　How then
can it be said (when the constitution annexes no penalty to the grant
and inflicts no punishment) that it is void, being repugnant to the
constitution of the United States?　This question is so plain in the
opinion of the Court that it requires no further solution.　That the
convention had full and ample powers to withhold office from public
defaulters, and that they have done so is equally certain.　To deny
the people, when acting in convention, this power, is to impeach the
right of self-government, and to destroy the means by which its bless-
ings and excellence can alone be perpetuated.

What is a Constitution?　The Constitution of an American State
is the supreme, organized, and written will of the people acting in
Convention, and assigning to the different departments of the govern-
ment their respective powers.　It may limit and control the action of
these departments, or it may confer upon them any extent of power
not incompatible with the federal compact.　By an inspection and
examination of all the constitutions of our own country, they will be
found to be nothing more than so many restrictions and limitations
upon the departments of the government and people.　"And the dis-
"tinction," says *Chief Justice Marshall*, "between a limited and an
"unlimited government is abolished if those limits do not confine the
"persons on whom they are imposed; and acts allowed and acts pro-
"hibited are of equal obligation."

If the constitution can restrict the right of suffrage and the right of
representation (and it has certainly done both) by positive enactments,

LITTLE
ROCK,
Jan'y 1837.

TAYLOR
vs.
The Gov'r.

and if it imposes conditions and limitations on all the departments of the government, legislative, executive, and judicial, and confines them within their proper and appointed spheres, can it be imagined that it is incompetent to annex a condition to the office of collector and holder of the public revenue? The question again occurs, can the applicant claim the office of Sheriff or demand the commission under the constitution and by virtue and authority of his certificate of election, when by his own showing he has already demonstrated that his pretended right is in express violation of one of its most important and salutary provisions? The simple statement of the question carries with it the answer. The applicant having failed to establish any legal or vested right to the office or commission, he is not therefore entitled to the benefit of the writ, for when there is no injury the law affords no redress. It is clear he is a defaulter both to the Territorial and State Government, and that he continued to be so at the time of the adoption of the constitution and at the time of his election and at the time of the demand and refusal of his commission and at the time of filing his petition; and that he was in the exercise of the duties of Sheriff, both before and after the adoption of the constitution, and after its acceptance and ratification by Congress. He is then clearly within the meaning of the constitution, and consequently ineligible to any office of profit or trust. So far as the rights and interest of the present applicant are concerned, the executive has done nothing that the law forbids; and whether his subsequent acts in relation to the same matter are inconsistent with his constitutional obligations to the county, or in violation of private rights, this Court will not take upon themselves to determine; for that question is not properly before them. The executive, in common with every other officer, is bound by oath to support the constitution, and whenever an effort is made to evade or violate it, it is not only his privilege but his duty to interpose and prevent it.

The Court conceive it to be no part of their duty to intimate an opinion in relation to the wisdom or folly of the clause disqualifying the applicant from office, or to say any thing in regard to its effect or consequences. It is sufficient for them that they have found it in the constitution, and of course they are bound to obey it.

The motion in this cause must therefore be dismissed with costs.