## SWEPSTON v. BARTON.

1. **ELECTION:** *Notice of contest.*
   In a contested election case the notice of contest serves the double purpose of both writ and declaration.

2. **SAME:** *Party elected ineligible.*
   The ineligibility of a party elected to office does not render the votes cast for him illegal, and give the election to his competitor next highest in the poll.

3. **SAME:** *Party elected a defaulter.*
   If a party elected to office be a defaulting collector or holder of public money, the Governor may withhold his commission; or, if commissioned, he may be ousted upon *quo warranto*. (*Quere:* It is questionable whether, until an officer's accounts have been adjusted by the Auditor, in case of a debtor to the State, or by the County Court, in case of a debtor to the county, he can be held disqualified as a defaulter, to hold office.)

Swepston v. Barton.

4. SAME: *Disqualification of the election officers.*
   Disqualification of the officers of an election at a particular polling place will not annul the poll. They are officers *de facto*—their acts as valid as to the public as if officers *de jure;* and their title can not be questioned, collaterally, as in a contested election case.

5. SAME: *Officer of election himself a candidate.*
   That an officer of an election was himself a candidate voted for will not invalidate the poll except as to his own election.

6. SAME: *Closing polls.*
   The provision of the statute requiring the polls to be closed at sunset is directory only.

7. SAME: *Legal votes refused or illegal received.*
   Refusing legal or receiving illegal votes will not affect the election unless they were sufficient in number to change the majority.

APPEAL from *Crittenden* Circuit Court.

Hon. C. E. BOESTTEA, Circuit Judge.

*Lyles & Harris,* and *Thomas M. Peters,* of Memphis, Tenn., for appellant:

The demurrer to the petition and the motion to quash ought to have been sustained, because :

1.   The sixth ground is the *only one tenable,* and it does not change the result. *Mann v. Cassidy, Brightly Lead. Cas. on Elections, p. 351.*

2.   There is no fraud charged, and irregularities, in the absence of fraud, will not vitiate. *The People v. Cook, ib., 423, 270.*

3.   A majority vote for a disqualified candidate does not elect the next highest. *The Commonwealth v. Curly, ib., 144.*

4.   The object of the law is to *secure* to every legal elector an opportunity to vote for his *choice,* and to have his vote *counted,* when the election is held in the manner and at the time and place appointed. This is the divine law—the *vox*

Swepston v. Barton.

*populi.* (*Const. Ark. 1874, art. 3; ib., art. 5, sec. 8; Acts 1874–5, p. 92; Act January 23, 1875; Smith's Com., 600 to 649; 33 Ark., 561.*) The will of the people must prevail. *The People v. Cook, Brightly L. C. on Elect., 440 to 449.*

5. The person receiving the majority of legal votes legally cast is elected. *13 Ala., 805; 9 Ala., 339; Const. of 1874 and act of January 23, 1875; The People v. Cook, supra.*

6. Throw out the illegal votes and appellant is still elected.

7. At every precinct complained of, two of the three judges were competent. This was sufficient. A different construction would defeat the will of the people, and defeat the purpose of the law. *Woodruff v. The State, 3 Ark.; 14 Haz. Pa. Ry., 129; Am. Fur Co. v. U. S., 2 Peters, 359; Smith's Com., 600 to 649; 30 Ark., 31; Gantt's Digest, secs. 5618, 5647; Acts 1874–5, p. 92; Am. Law Reg., vol. 12, p. 54; 36 Ark., 446.*

8. The proof fails to show appellant a defaulter, and if it did, it did not elect appellee. It would simply have necessitated a new election, etc. See, also, *Const., art. 3 and art. 5, sec. 8; Acts 1874–5, p. 92; Johnson v. The State, 17 Ark., and supra.*

*Greer & Adams,* of Memphis, for appellee :

1. All the points raised by appellee are fully set out and passed upon by the County Court in its judgment, and by the Circuit Court, and the judgment should be affirmed. *Govan v. Jackson, 32 Ark., 553.*

2. Appellant was a defaulter and ineligible. (*Const. of 1874, sec. 8, art. 5; Taylor v. The Governor, 1 Ark., 21.*) He could not offset any claim he had against the county. The accounts are not mutual. (*Lee County v. Govan, 31 Ark., 610.*) Although this was not one of the original grounds

Swepston v. Barton.

of contest, yet the courts may allow amendments at any time. *Gantt's Digest*, secs. *4616, 4620*.

2. Appellant being ineligible, the votes cast for him could not be counted, and appellee, receiving the next highest number, and being the only other candidate, was elected. *Gulick v. New, 14 Ind., 93; Taylor v. The Governor, 1 Ark., 21; Carson v. McPhetridge, 15 Ind., 327*.

3. The election held at Hopefield was void, because one of the judges was postmaster. (*Art. 3, sec. 10, Const.*) So of Marion precinct, and so of Crawfordsville, one of the judges being a non-resident of Arkansas. *Art. 19, sec. 3 Const.; Acts 1874–5, p. 110, sec. 100*.

4. There is no bill of exceptions in the transcript, and the judgment should be affirmed.

SMITH, J. At the general election in 1882, Swepston and Barton were opposing candidates for the office of Sheriff of Crittenden County. The returns showed Swepston's election by a majority of 165 votes, and he was commissioned. Barton instituted a contest in the County Court, and was successful there, as also in the Circuit Court, on appeal, where he recovered a judgment of ouster against Swepston.

There is in the record no paper purporting to be a bill of exceptions, and to be signed by the presiding judge, which appears either from the indorsement of the clerk or from any record entry to have been filed in the cause. Consequently, the scope of our review is limited to such errors as are apparent upon the record without the intervention of a bill of exceptions.

1. CONTEST-ED ELEC-TION: Notice is both writ and declaration.

In this proceeding the notice of contest is the foundation of the action, and performs the double office of a writ and a declaration. *Vance v. Gaylor, 25 Ark., 32*.

A motion to strike out the specifications contained in

Barton's original and amended notice, and also a demurrer to the same, were successively overruled and exceptions saved. This raises the question whether, conceding the grounds of contest set forth in the notice to be true in point of fact, they are sufficient in law to put the opposite party to proof.

The specifications were as follows :

1 and 2. One of the three judges of election at each of the voting precincts of Marion and Hopefield was a postmaster.

3. At Crawfordsville precinct one of the judges was a non-resident of the State.

4. At the same precinct there was a discrepancy of two votes between the tally-sheet and the returns, the former showing 404 votes cast, and the latter 402, and the judges and clerks, when summoned before the canvassing board, struck off two votes from the tally-sheet, so as to make it correspond with the returns.

5. At the same precinct the judges began to count the votes before sunset; but other qualified electors appearing, their votes were received.

6. At the same precinct twenty-five persons, naming them, who were not qualified electors, were permitted to vote.

7. At Bradley precinct one of the clerks of election was a minor.

8. At the same precinct six votes were wrongfully counted against Barton.

9. At Fifteen-Mile-Bayou precinct, one of the judges was a candidate for justice of the peace—an office to be filled at the same election.

10. The returns from Ferguson precinct give the contestee 61 votes, and the contestant 46; whereas, the certificate of the judges and clerks shows that Barton received

46 votes and Swepston none. Also the poll-books of this precinct were signed and certified by only one clerk.

11. At the same precinct one of the clerks was a candidate for the office of justice of the peace.

In the Circuit Court the contestant was allowed, over the objection of his competitor, to add, by way of amendment, a twelfth ground of contest, viz:

That Swepston was a defaulter to the county, having held the office of county clerk from 1868 to 1873, and from 1876 to 1878, and, while in office, having collected a certain tax on certificates of record upon recorded instruments which he had failed to pay over or account for.

The *Constitution of 1874, article 5, section 8,* provides that no person who now is, or shall be hereafter, a collector, or holder of public money, * * * shall be eligible * * * to any office of trust or profit, until he shall have accounted for and paid over all sums for which he may have been liable.

No judicial ascertainment of this defalcation is alleged, but only that the County Court had referred the accounts of Swepston to commissioners, and that they had reported that he was indebted in a certain sum; but no final action upon the report seems to have been had. It may be questionable whether, until an officer's accounts have been adjusted by the Auditor, in the case of a debtor to the State, or by the County Court, in the case of a debtor to the county, such a disqualification arises as to debar him from office.

2. Same: Party elected ineligible. As to the legal effect of votes cast for an ineligible candidate, two views have been entertained. The English doctrine is, that if the disqualification of a candidate is notorious, votes cast for him will be deemed to have been purposely thrown away, and the candidate having the next highest number of votes will be elected. The English

authorities on this subject are reviewed in the Galway election cases, (*2 Moak's Eng. Rep., 714*), and the cases are collected in a note to *Commonwealth v. Cluley*. (*Brightley's Leading Cases on Elections, 151.*) This rule has been adopted in *Gulick v. New, 14 Ind., 93; Carson v. McPhetridge, 15 Ind., 327,* and *Hutchinson v. Tilden, 4 Har. & McH., 279.*

Now, there is no averment of knowledge, by the electors, of Swepston's ineligibility, nor of any facts from which notice could be implied. The fair inference is, that it was not generally known, since the contestant, as it appears, only became aware of it after the institution of his contest.

But the weight of American authority is, that when a vote for an ineligible candidate is not declared void by statute, the votes he receives, if they are a majority or plurality, will be effectual to prevent the opposing candidate being chosen, and the election must be considered as having failed. *Cooley on Const. Lim., 620; Dillon Mun. Corp., 196, (135),* and cases cited. *Commonwealth v. Cluley, 56 Pa. St., 270; People v. Clute, 50 N. Y., 451; State v. Tierney, 23 Wis., 430; People v. Morliter, 23 Mich., 341; Crawford v. Dunbar, 52 Cal., 37; State v. Vail, 53 Mo., 97; Fish v. Collins, 21 La. Ann., 289; Cockran v. James, 14 Am. Law Reg., 222.*

The real issue in this cause was, which candidate received a majority of the legal votes cast. If Barton did not obtain such a majority, but his competitor was ineligible, it by no means follows that he, as the next in the poll, should receive the office. "The votes are not less legal votes because given to a person in whose behalf they can not be counted." *Saunders v. Haynes, 13 Cal., 145.*

If Swepston was a defaulter, the Governor, if that fact had been properly brought to his notice, might have lawfully refused to sign his commission. (*Taylor v. Governor, 1 Ark., 21.*) And he may still be ousted upon *quo warranto.*

For ineligibility relates to the capacity of holding, as well as being elected to an office. (*Carson v. McPhetridge*, *15 Ind.*, *327*.) But it is not a matter which is involved in the present contest, for, if true, it does not show Barton's election.

**4. SAME: Election officers disqualified.** The first, second, third, seventh, ninth and eleventh grounds of contest relate to the qualifications of election officers. By them Barton objects to the counting of certain returns, not on account of any illegal and wrongful act purposely committed by those officers and tending to prevent a fair expression of the popular will, but because they did not possess the qualifications required by law.

Our Constitution provides (*section 10, of article 3*), that " no person shall be qualified to serve as an election officer who shall hold at the time of the election any office, appointment or employment in or under the Government of the United States.

"Nor shall any election officer be eligible to any civil office to be filled at an election at which he shall serve."

Our election law enacts that the County Court shall appoint three discreet persons in each township, having the qualifications of electors, to act as judges of election, and the judges shall select two persons having the like qualifications, to act as clerks. The judges are also to be able to read and write, and no candidate for any office elective at that election, is to be judge. *Act of January 23, 1875, sections 3 and 100.*

It is a manifest impropriety for the County Court knowingly or carelessly to appoint as judges, and for the judges to select as clerks, persons not having the requisite qualifications. But we are not prepared to say that this is such a flagrant and incurable irregularity as to vitiate the poll. That would be to punish the people for the defaults of their agents, and to transfer elections from the qualified

voters to the canvassing boards. The established rule is, that informalities and slips in the minor details of an election are to be overlooked, provided they do not deprive any legal voter of his vote, nor admit a disqualified person to vote, nor cast any uncertainty on the result, and have not been brought about by the agency of a person seeking to derive a benefit from them. *The People v. Cook, 8 N. Y., 67; S. C. Brightley's Lead. Cases on Elec., 423,* where the authorities are collated.

But there is another principle of the law which is decisive of this question. These judges and clerks of election were officers *de facto.* Now the acts of such an officer, so far as the public is concerned, are as valid as the acts of an officer *de jure.* His title can not be inquired into collaterally. For an application of this principle to election officers, see *The People v. Cook,* and cases there cited, and *Brightley's Note, supra.*

The fact that some of the election officers were candidates at the same election, while it might avoid the election as to them, would not affect the other candidates.

5. Same: Election officer himself a candidate.

Of the fifth specification it is sufficient to say that the provision of the statute, that polls are to be closed at sunset, has been construed to be directory, not mandatory. *Act of January 23, 1875, section 16; Holland v. Davies, 36 Ark., 446.*

6. Same: Closing polls.

The remaining grounds of contest, if they are true in fact, are insufficient to change the result. It is no valid objection to an election that illegal votes were received, or legal votes rejected, if they were not numerous enough to overcome the majority. *Sudbury v. Stearns, 21 Pick., 148; Blandford v. Gibbs, 2 Cush., 39; Christ Church v. Pope, 8 Gray, 140; Ex parte Murphy, 7 Cown., 153; McNeeley v. Woodruff, 1 Green, 352; The People v. Cicott, 16 Mich., 295; The People v. Tuthill, 31 N. Y., 550; Matter Chenango Mutual Insurance Co., 19 Wend., 635.*

7. Same: Legal votes refused, or illegal received.

The notice of contest concedes the election of the contestee upon the face of the returns, and does not state facts sufficient to set aside votes enough to elect the contestant. In truth, this result can be reached only by the suppression of the vote of whole townships for mere irregularities, not going to the merits.

Reversed and remanded, with directions to sustain the demurrer to the notice of contest.