Collins *v.* McClendon.

Opinion delivered April 30, 1928.

*Sam M. Levine,* for appellant.

*E. W. Brockman,* for appellee.

Smith, J.   Under the authority of *Wood* v. *Miller,* 154 Ark. 318, 242 S. W. 573, appellee brought this suit to oust appellant from the office of mayor of the town of Gould, in Lincoln County.   According to the returns of the election officers, appellant received 34 votes and appellee 32 for that office.   It was alleged that certain illegal votes had been cast for appellant, and that certain legal votes, which would have been cast for appellee, were excluded by the officers of the election, but, as it also appeared that appellant was, at the time of the election, the duly qualified and acting member of the House of Representatives from Lincoln County, the court did not consider and determine whether illegal votes had been cast or legal votes had been excluded.   The court found the fact to be that knowledge on the part of the electors of the town that appellant was a member of the Legislature was general, and, upon this finding, the court declared the law to be that "the votes cast for the ineligible candidate are thrown away, not to be counted at all, and leaves the man who received the next highest number of votes as the elected candidate to the office," and upon this declaration of law appellee was declared to have been elected, although he received a less number of votes than his opponent.

There is very respectable authority to support the declaration of law made by the court below.   Indeed, it is asserted by counsel for appellee that the weight of authority accords with the view announced by the court.

We have not felt called upon, however, to determine that question, as this court has committed itself to a different rule.

In the case of *Swepston* v. *Barton,* 39 Ark. 549, it was contended that Barton was elected sheriff, although Swepston had received the larger number of votes for that office, for the reason that Swepston was ineligible to hold the office of sheriff, in that he had defaulted in the settlement of his accounts in another office. After stating the English rule to be that, if the disqualification of a candidate is notorious, votes cast for him will be deemed to have been purposely thrown away, and the candidate having the next highest number of votes will be elected, the court proceeded to say that, by the weight of authority, the American rule was to the contrary, and that, when a vote for an ineligible candidate is not declared void by statute, the votes he receives, if they are a majority or plurality, will be effectual to prevent the opposing candidate being chosen, and the election must be considered as having failed. It was there said:

"The real issue in this cause was, which candidate received a majority of the legal votes cast? If Barton did not obtain such a majority, but his competitor was ineligible, it by no means follows that he, as the next in the poll, should receive the office. 'The votes are not less legal votes because given to a person in whose behalf they cannot be counted.' *Saunders* v. *Haynes,* 13 Cal. 145. If Swepston was a defaulter, the Governor, if that fact had been properly brought to his notice, might have lawfully refused to sign his commission. (*Haylor* v. *Governor,* 1 Ark. 21). And he may still be ousted upon *quo warranto,* for ineligibility relates to the capacity of holding, as well as being elected to an office (*Carson* v. *McPhetridge,* 15 Ind. 327). But it is not a matter which is involved in the present contest, for, if true, it does not show Barton's election."

While appellant was ineligible, under § 10, article 5, of the Constitution, as construed in the case of *Wood* v. *Miller, supra,* to be elected mayor, we have no statute

which declares the vote for an ineligible candidate to be void, and, this being true, a majority or a plurality of votes cast for an ineligible candidate operates to prevent the opposing candidate from being chosen, in which event the election must be considered as having failed.

The court in the case of *Swepston* v. *Barton, supra,* quoted with approval the conclusion of the Supreme Court of California in the case there cited. The reason for that conclusion, as stated in the opinion, was as follows:

"An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But if a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received only a small portion of the votes, and who never could have been elected at all but for this mistake. The votes are not less legal votes because given to a person in whose behalf they cannot be counted; and the person who is the next to him on the list of candidates does not receive a plurality of votes because his competitor was ineligible. The votes cast for the latter, it is true, cannot be counted for him; but that is no reason why they should, in effect, be counted for the former, who, possibly, could never have received them. It is fairer, more just, and more consistent with the theory of our institutions, to hold the votes so cast as merely ineffectual for the purpose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretensions the people had designed to reject."

We attempt no review of the conflicting authorities on this question, as we think the case of *Swepston* v. *Barton, supra,* is conclusive of it in this State.

It follows therefore that the judgment of the court below must be reversed, and the cause remanded with directions to hear appellee's contest on its merits for the purpose of determining whether appellee did, in fact, receive a majority of the legal votes.