BOHLINGER *v.* CHRISTIAN.

4-3698

Opinion delivered October 22, 1934.

840

*Pettit & Meek,* for appellant.

*Majors & Robinson* and *Strait & Strait,* for appellee.

BUTLER, J. Yell County is entitled to two representatives. Following the general Democratic primary, held August 14, 1934, the Democratic Central Committee of that county met on August 17 after the election to cast the returns thereof and issued certificates of nomination for the offices of representative to E. H. Cheyne and to the appellee, J. A. Christian.

The appellant brought this suit against the appellee, contesting his right to the nomination. He alleged that E. H. Cheyne, J. A. Christian and himself were candidates for the nomination for said two offices, and that the candidates received—Cheyne, 2,652 votes; appellee, 2,489; and the appellant 1,754; that the appellee was ineligible to hold the office of representative and was not entitled to the certificate of nomination. Certain specific grounds of ineligibility were alleged.

The appellee demurred to the complaint and, without waiving his demurrer, filed an answer thereto. The case was submitted to the court on an agreed statement of facts, and the court rendered a judgment in favor of the appellee on the merits without passing upon the demurrer. It was agreed as a fact that, according to the official election returns, the candidates received, respectively, the number of votes alleged in the complaint.

On appeal many authorities are cited by the appellant to sustain his contention that the appellee is ineligible to receive and hold the nomination for representative, and much of his brief is devoted to arguments supporting that contention.

At the threshold of the case, however, appellant is met with the proposition that, before he can contest appellee's nomination, he must allege and show that he, himself, was entitled to that nomination. By act 38 of the Acts of 1933 it is provided that: "No person shall be declared the nominee of any political party at any primary election for United States Senate, United States House of Representatives, State, district or county office unless such person has complied with every requirement of all laws applicable to primary and other elec-

tions, and has received a majority of all the votes cast at such primary election for all candidates for such office."

It seems to be the theory of the appellant that he has received a majority of the votes cast because the votes cast for an ineligible candidate should not be counted. We are unable to agree with this contention.

In support of the contention that he received a majority of the votes cast within the meaning of the law, appellant argues that the decisions cited by appellee have no application. We see nothing in the act relied on to support the argument made, but are of the opinion that the principles announced in those cases are unimpaired and applicable here. The only difference in our primary election laws with respect to the number of votes necessary to entitle a candidate to nomination is that, before the act of 1933, a plurality of the votes cast for any given office entitled the candidate receiving the same to the nomination, while now the candidate to be nominated must receive "a majority of all the votes cast at such primary election for all the candidates for such office." This change in the law in no wise affects the rule first announced in the case of *Swepston* v. *Barton*, 39 Ark. 549, that "when a vote for an ineligible candidate is not declared void by statute, the votes he receives, if they are a majority or plurality, will be effectual to prevent the opposing candidate being chosen, and the election must be considered as having failed."

In *Storey* v. *Looney*, 165 Ark. 455-8, 265 S. W. 51, this court said: "The question necessarily presents itself in the beginning, whether or not appellant is in an attitude to contest the certificate of nomination awarded to appellee. * * * In order to make a contest for nomination, appellant must show that he is entitled to the nomination himself, which he fails to do. * * *"

The doctrine announced in the case of *Swepston* v. *Barton, supra*, was reaffirmed in *Collins* v. *McClendon*, 177 Ark. 44, 5 S. W. (2d) 734, in the following language: "The real issue in this cause was, which candidate received a majority of the legal votes cast? If Barton did not obtain such a majority, but his competitor was in-

eligible, it by no means follows that he, as the next in the poll, should receive the office. 'The votes are not less legal votes because given to a person in whose behalf they cannot be counted.'"

Of the total number of votes cast for representative the appellant received only 1,754, which, as appears from facts already stated, was not a majority. Therefore, under the principles announced in the cases cited, neither by the pleadings nor proof is the appellant entitled to wage this contest. As said in *Saunders* v. *Haynes*, 13 Cal. 145, quoted with approval in *Collins* v. *McClendon*, *supra*: "An election is the deliberate choice of a majority or plurality of the electoral body. This is evidenced by the votes of the electors. But if a majority of those voting, by mistake of law or fact, happen to cast their votes upon an ineligible candidate, it by no means follows that the next to him on the poll should receive the office. If this be so, a candidate might be elected who received only a small portion of the votes, and who never could have been elected at all but for this mistake. The votes are not less legal because given to a person in whose behalf they cannot be counted; and the person who is the next to him on the list of candidates does not receive a plurality of votes because his competitor was ineligible. The votes cast for the latter, it is true, cannot be counted for him; but that is no reason why they should, in effect, be counted for the former, who, possibly, could never have received them. It is fairer, more just, and more consistent with the theory of our institutions, to hold the votes so cast as merely ineffectual for the purpose of an election, than to give them the effect of disappointing the popular will, and electing to office a man whose pretensions the people have designed to reject."

The result of our views is that the judgment of the trial court is correct, and it is therefore affirmed.