LADY *v.* SMITH.

4-5372                                    121 S. W. 2d 99.

Opinion delivered October 31, 1938.

M. P. *Watkins* and *Arthur L. Adams,* for appellant.
*Lamb & Barrett,* for appellee.

McHANEY, J. Appellant was a candidate before the recent democratic primary election for renomination to the office of circuit clerk of Poinsett county and was opposed by appellee. The election was held on August 9, and, on August 12, the returns were canvassed by the Democratic County Central Committee, and it was found that appellant had received 3,864 votes, and that appellee had received 4,015, a majority in appellee's favor of 151 votes. A certificate of nomination was thereafter issued to appellee.

Within the time provided by law, appellant instituted this proceeding to contest said nomination. His complaint charged that a great many illegal votes, naming the voters, were cast for appellee and stated the reasons for their illegality. Appellee answered denying the allegations of the complaint, and in paragraph 37 charged collusion and conspiracy of contestant with many others whereby many fraudulent assessments were made and many poll tax receipts fraudulently and wrongfully issued, to the extent of 4,000, whereby that many votes were procured or were affected thereby. An amendment to the answer was later filed, naming 50 persons

who cast their votes illegally because of the fraudulent assessment and payment of poll taxes.

The issues being joined, the case was called for trial when appellee offered proof in support of the allegations contained in paragraph 37 of the answer, to show that appellant was disqualified from holding the office, whether elected or not, under the provisions of § 4700 of Pope's Digest. The court permitted this procedure over appellant's strenuous objections and exceptions. Trial on this issue resulted in a finding by the court "that the contestant (appellant) had full knowledge of the making of improper assessments, and actually paid for and delivered poll tax receipts based upon some of such assessments, in violation of law. The court is, therefore, of the opinion that the contestant is shown to have violated the last provision of § 4699 of Pope's Digest. The court is also of the opinion that the contestant was a party to the procuring of authority to make assessments for various persons upon which poll taxes were issued, and such assessments were so made in violation of law." Based upon this finding the court entered judgment, on motion of appellee, dismissing the contest on the ground that appellant was disqualified to hold the office or any office for four years, from which is this appeal.

For a reversal of this judgment appellant presents two arguments: 1. That the court erred in holding that appellant was disqualified as a candidate and to hold office; and 2, that the court erred in finding and holding that disqualification abated the contest and erred in dismissing it without a trial on the merits.

Counsel present the second proposition first, that is, whether the question of eligibility to hold the office is triable first, and, on an affirmative finding, after trial of that issue, of disqualification of contestant, whether the action is abated, without going into the merits of the case. Both sides apparently concede that a trial to determine who received the greater number of votes would be a lengthy one, probably two months, entailing great labor and expense, with a record of vast proportions. If, in fact, the proof shows that appellant is disqualified under the statute, and if under the law such disqualifica-

tion abates the action, it would seem to be a needless waste of effort and substance to go through with the trial. Appellant argues that the question should have been raised by motion to dismiss; instead of by answer, and apparently concedes that had it been so raised, it would have been proper to dispose of the motion before trying the case on the merits. This appears to us to be an insistence on form rather than substance. There is no statute requiring it. Trial courts are vested with a very wide discretion in the manner and method of trying cases, and in procedure, where there is no governing statute.

In *Irby* v. *Day*, 182 Ark. 595, 32 S. W. 2d 157, both parties were candidates for nomination as representative of Clay county. Day was returned and certified as the nominee. Irby filed a contest suit to which Day filed a plea in abatement for the reason that Irby had been previously convicted in the federal court of the crime of embezzling post office funds while a postmaster. Irby demurred to the plea which was overruled. He declined to plead further, and his contest was dismissed. On appeal, this court said: "The plea was sufficient to show that appellant was ineligible to hold the office of representative from Clay county, and for that reason had no right to contest appellee's certificate of nomination." There the ineligibility of contestant did not depend upon proof, as the plea alleged it, and the demurrer admitted it. The only difference between that case and this is that here ineligibility depended on proof of the doing of the things prohibited by statute which defined the ineligibility. The last paragraph of § 4699 of Pope's Digest reads as follows: "All poll tax receipts issued by the collector shall be made out and signed with pen and ink. No poll tax receipt shall be delivered to any person later than five days after the date of the issuances thereof, and the date written on the poll tax receipts shall be the date of issuance. It shall be unlawful for any person to be found in possession of any poll tax receipt other than his own after five days after the date of issuance thereof. It shall be unlawful for any person to deliver to another a poll tax receipt and unlawful for any person to re-

ceive a poll tax receipt after five days after the date of issuance thereof. No candidate for office shall purchase either directly or indirectly any poll tax receipt except for himself or his wife, parents and children. The violation of any of the provisions or requirements of this section shall be deemed a misdemeanor and shall be punished by a fine of not less than $50 nor more than $200, and the violation of any provisions of this section shall render the persons so violating the same ineligible to hold any office in this state." Section 4700 provides: "It is hereby declared unlawful for any candidate for office to assess the poll tax of any person without written authority as herein provided in § 4695; and should it appear in any election contest that any candidate for office without such authority has assessed the poll tax of any person or persons, such fact when proven will of itself deprive such person from holding any office in this state for a period of four years, whether the said candidate shall have been elected or not; and it is hereby made the duty of the court or judge trying any election contest to so find whether or not such fact is proven, and the evidence upon such fact may be reviewed by any appellate court to which the cause may be appealed, and the finding of the trial court upon this fact of assessing or paying poll taxes will not be binding upon such appellate court."

But counsel for appellant contend that *Irby* v. *Day* has been in effect overruled by the later cases of *Bohlinger* v. *Christian*, 189 Ark. 839, 75 S. W. 2d 230, and *Winton* v. *Irby*, 189 Ark. 906, 75 S. W. 2d 656. We cannot agree that such is their effect. Take the Winton case, as the same Irby is involved as in *Irby* v. *Day*. In *Winton* v. *Irby*, each was a candidate for county judge of Clay county. Irby was the nominee, and Winton contested. Among other grounds, he charged in paragraph 8 that Irby was disqualified by reason of the conviction above mentioned in *Irby* v. *Day*. On motion of Irby the court struck out said paragraph 8. In sustaining the action of the trial court on appeal, this court said: "Paragraph 8 did not state a ground of contest. A candidate contesting a primary election must show in order to suc-

ceed, that he has received a majority of all the votes cast at such primary election. The real issue is, which candidate received a majority of the legal votes cast. If his competitor was ineligible, this would not entitle the contestant to receive the certificate of nomination, unless the contestant received a majority of the legal votes.'' Citing cases. As we view it, this decision does not conflict with *Irby* v. *Day,* for there the court was asked to do a vain and useless thing—determine a contest at the instance of one not qualified to hold the office should he succeed. Whereas in the Winton case, Winton sought to contest the election of Irby on the ground that Irby was disqualified as set out in paragraph 8, not that he (Winton) received the majority of the votes. We think there is no abuse of discretion shown on the part of the court in proceeding as it did. On the contrary, his action was proper.

As to the first proposition above stated, we agree with the trial court that the evidence is sufficient to support the court's finding of disqualification under the statute. We think the evidence sufficient to sustain the finding that appellant, with others procured illegal assessments to be made and poll tax receipts to be issued, and assisted in paying for them. His friend and supporter, Mangrum, testified that, at appellant's suggestion, he secured the signing of slips authorizing him to assess and secure poll tax receipts for thirty or more persons which he took to appellant, and that appellant told him to ''turn them in at the sheriff's office''; that he assessed them and turned them in at the sheriff's office; that appellant, a little later, brought the poll tax receipts to him at his barber shop; that he then delivered said receipts to the persons from whom he got the signed slips; that he paid nothing to the county clerk to make the assessments, nor to the collector for the poll tax receipts; and that no person to whom he delivered said receipts paid him anything therefor. It is undisputed in this record that hundreds, perhaps thousands of persons were assessed and received poll tax receipts in the same way, none of whom, with a few exceptions, paid for the delinquent assessments or for the poll tax receipts. Two

other witnesses, Rorex and Ramsey, say they were taken to appellant's office by one Bridges, and that they were assessed and their poll tax receipts delivered to them by appellant. This is disputed by Bridges, appellant, and his father to the extent that he and the father say that the father was in the office at the time, and that he handled the matter, received the slips, made the assessments and procured the receipts. Rorex and Ramsey deny this and state they did not know appellant's father, and had never seen him. Bridges first stated that he had not assessed for any person except his wife, but later admitted he had acted for several others. Another significant fact is that on June 9, 1938, appellant had given a check to the collector, not as such, but to him personally, for $500 drawn on the Bank of Harrisburg, which appellee says was in part payment for delinquent assessments and poll tax receipts. This check was deposited in the bank in Marked Tree, cleared through a Memphis bank, and was charged to appellant's account on June 13. Appellant testified he had borrowed this sum from the payee, and the check was given in repayment of the loan, but the explanation given and the circumstances surrounding the transaction were sufficient to justify the trial court, and this court in drawing the inference that said check was in payment of poll tax receipts and delinquent assessments. The county clerk testified that several thousand delinquent poll tax assessments were paid for by the collector after the assessments were made, and that some of them are probably still unpaid.

We are asked to hold that appellee is also disqualified, but apparently no effort was made to show that he was. It is said we should reverse the case to give appellant another chance to show that appellee was guilty of purchasing poll tax receipts. We cannot agree. He had his opportunity to so show, and the trial court was very careful to give him every opportunity to offer any evidence desired, but he closed his case without doing so.

We find no error, and the judgment is accordingly affirmed.