PORTER *v.* HESSELBEIN.

5-2724                                     360 S. W. 2d 499

Opinion delivered September 17, 1962.

[Rehearing denied October 22, 1962.]

*Phillip H. Loh* and *U. A. Gentry,* for appellant.

*Felver A. Rowell, Jr.* and *Gordon & Gordon,* for appellee.

Dissenting opinion attached.

JIM JOHNSON, Associate Justice. This case involves an election contest. Appellant Porter, Appellee Hesselbein and Homer Gray were candidates for the nomination of alderman of the Third Ward in the City of Morrilton in the Democratic preferential primary on July 25, 1961.

There were 605 votes cast. Hesselbein received 327 votes, Porter received 178 and Gray 100 votes. Hesselbein was thereafter certified by the county central committee as the Democratic nominee.

Porter filed suit against Hesselbein contesting the certification of vote and certification of nomination, relying upon the following portion of Initiated Measure of 1916, No. 1, § 12 [Ark. Stats. § 3-245]:

"A right of action is hereby conferred on any candidate to contest the certification of nomination or the certification of vote as made by the county central committee. . . . The complaint shall be verified by the affidavit of the contestant to the effect that he believes the statement thereof to be true, and shall be filed within 20 days of the certification complained of."

The complaint was filed within 20 days of the certification and verified, as provided in the statute, *supra*. The allegations of the complaint contest both the certification of the vote and the certification of nomination. (The complaint was filed within the 20 days, but on the day following the date for the general primary, which by statute is to be held 14 days after the preferential primary.)

On November 21, 1961, the contestee filed a motion to dismiss the complaint on the ground that the contestee had been elected alderman of the Third Ward in the general election and, by reason thereof, the court had lost any and all jurisdiction to award plaintiff any of the relief sought in his complaint. The motion was granted, from which comes this appeal.

For reversal, appellant contends that: (1) The court erred in holding that a candidate in a preferential primary (who does not allege that he received a sufficient number of votes to entitle him to a certificate of nomination) cannot contest the election, and in dismissing the complaint; and (2) The court erred in holding that the cause had become moot after the general election and in dismissing the complaint.

First we will consider the second point urged for reversal. Appellee cites two Arkansas cases in support of his contention that the cause is now moot. They are *Kays* v. *Boyd,* 145 Ark. 303 at 305, 224 S. W. 617, and *Cecil* v. *Cline,* opinion delivered March 5, 1962. The Kays case is a suit to reinstate a student suspended from the State Agricultural School for conduct unbecoming a gentleman. The trial court granted the prayer of the petitioner and ordered the Board of Trustees to restore the student to full scholarship, which was done. The Board of Trustees appealed to this court, and the school term lapsed while the appeal was pending. The court therefore found that a decision of the case could have no practical application to the controversy between the litigants, and dismissed the appeal of the Board of Trustees.

*Cecil* v. *Cline, supra,* is an election contest case. The appeal was dismissed as moot because the record clearly showed that the term of office over which the controversy arose had expired.

From the record in the case at bar, the term of office in controversy commenced January 1, 1962, and will not expire until December 31, 1963. With the state of the record being thus, *i.e.,* the term of office having not yet expired, we find that the cited cases have no bearing on the question here presented for our consideration. However we do find two sections of the Arkansas Statutes which have a great deal of bearing on the question. They are as follows:

"No person shall be declared the nominee of any political party for . . . municipal office unless such person shall have complied with every requirement of all laws applicable to primary and other elections *and has received a majority of all votes cast* at such primary election for all candidates for such office." Acts 1943, Ark. Stat. 3-201. (Emphasis ours).

"Should a proceeding (contest) . . . be not determined finally until after the election, and the defendant in such proceeding is elected to the office as the nominee of the party, and it is determined that he was not entitled

to the nomination, . . . then such judgment shall operate as an ouster from office, and the vacancy in it shall be filled as provided by law for filling vacancies in such office in case of death or resignation." Init. Measure of 1916, Ark. Stat. 3-253. (Insert ours).

From these sections of our statutes, we find that the people by an Initiated Measure have provided that a nominee for a municipal office must have received a majority of all votes cast at the primary election and further provided that in the event it is judicially determined even after success in the general election that such person was not entitled to nomination, such judgment shall operate as an ouster from office. This being true, we have no choice but to conclude that the cause is not moot.

See generally, *Higgins* v. *Barnhill*, 218 Ark. 466, 236 S. W. 2d 1011.

The remaining point urged for reversal presents a case of first impression in this jurisdiction. As stated above, appellant contends that the trial court erred in holding that a candidate in a preferential primary (who does not allege that he received sufficient votes to entitle him to a certificate of nomination) cannot contest the election. It is true that the case of *Hill* v. *Williams,* 165 Ark. 421, 264 S. W. 964, and *Story* v. *Looney,* 165 Ark. 455, 265 S. W. 51, and the line of cases following them are authority for the rule that Initiated Measure of 1916, No. 1, § 12 [Ark. Stat. 3-245] *supra* ". . . confines the right of contest to a candidate at the primary election, . . . who claims to be the rightful nominee." If for no other reason than to avoid a multitude of suits and lend some stability to our election laws, we agree that this is a salutary interpretation of the 1916 Initiated Measure and should under proper circumstances be followed. If the question presented for our consideration merely involved an application of this established rule, our task would be simple indeed. Unfortunately this is not the case. In 1943 the Legislature amended our election laws and provided as follows:

"Whenever any political party in this State shall, by primary election, select party nominees as candidates at any general (regular or special) election, for any . . . municipal office, said party shall hold a preferential primary election on the day two (2) weeks prior to said general primary election, which preferential primary shall be conducted according to the law prescribed for conducting the general primary election in this State." Acts 1943, Ark. Stat. 3-210.

With the enactment of this law providing for a preferential primary it is engrafted upon our existing election laws, such as they are, and becomes a part thereof. Now for the first time since the adoption of the 1943 Act, this court is presented with the question of whether a duly qualified candidate for a municipal office can properly contest an election while, under the facts, he cannot honestly allege that he received a sufficient number of votes to entitle him to a certificate of nomination, but instead does allege *inter alia* that when the election returns are purged of the enumerated illegal votes it would be shown that such candidate should be certified as a candidate in the run-off or general primary election. Certainly the right of a candidate to be in a run-off or general primary for nomination to public office is a valuable right. While such right may not be as valuable as the right to be certified as the nominee, it is nonetheless a valuable right and in our view should not be denied. If the allegations of appellant's complaint are judicially found to be true, appellee is presently holding office without having received a majority of the votes cast in the primary election, contrary to the prohibitions of the statute providing that no person shall be declared to be the nominee unless such person has received a majority of all votes cast. Ark. Stat. 3-201, *supra*. It would necessarily follow, in such an event, that the provisions of Ark. Stat. 3-253, *supra*, would operate as an ouster from office. As in all election contest cases in which the contestant prevails subsequent to the general election and after the contestee has been sworn into the office in question, success in the contest may not personally benefit the contestant, but to deny

a contestant, because of this, the right, in a proper case, to contest an election would be a denial of a right which in most cases is precious to the contestant and of inestimable value to the general public in the maintenance of the democratic processes. Therefore it is our view that the Legislature by the enactment of Act 238 of 1943, *supra,* providing for a preferential primary election has given a candidate in such preferential primary, as a matter of public policy, the right to contest such election upon the proper allegations of entitlement to be certified as a candidate in the run-off or general primary election. To hold otherwise would effectively prohibit election contests in preferential primaries regardless of the skulduggery which might be employed in the conduct of an election. Accordingly, the order of dismissal is reversed and the cause is remanded for further proceedings consistent with this opinion.

HARRIS, C. J., and McFADDIN and ROBINSON, JJ., dissent.

ED F. McFADDIN, Associate Justice (Dissenting). I respectfully dissent from the reversal. The learned Trial Judge delivered a written opinion which is in the transcript, and to which I subscribe. I therefore use as my dissent the applicable portion of the written opinion of the Honorable Paul X. Williams, who was the Trial Judge in the case. It is as follows:

"C. L. Hesselbein, Fred Porter, and Homer Gray were candidates for the Democratic nomination for the office of Alderman of the Third Ward of Morrilton, Arkansas, in the preferential primary election held by the Democratic party on July 25, 1961. Each of the individuals was and is a member of the Democratic Party, was a qualified candidate for the nomination sought and voluntarily sought the nomination of the Party.

"Since there were more than two candidates for the nomination it was necessary that they submit themselves to the preferential primary.

"As a result of the said preferential primary held on July 25th Hesselbein was certified to have been the recip-

ient of 327 votes, Porter 178 votes, and Gray 100 votes, and since 327 was more than a majority of all votes, the Democratic Party Officials, by virtue of the provisions of Act 238 of 1943 (The Preferential Primary Law) certified Hesselbein to be the Democratic nominee.

"Neither of the losing candidates applied for a recount or for an order to place either of their names on the Democratic ballot in the general primary election which was held on August 8th.

"On August 14, 1961, Porter filed in the Conway Circuit Court an instrument designated 'complaint' in which he named himself as plaintiff and C. L. Hesselbein as defendant. The prayer of that instrument is as follows:

" 'Wherefore, plaintiff prays that he be adjudged and declared one of the duly elected nominees of the Democratic Party for the run-off or elimination primary for Alderman of the 3d ward of the city of Morrilton, Arkansas and that the court enter an order herein directing the county Democratic Central Committee to certify him as such nominee; for his costs herein, and for all other proper and legal relief to which he may be entitled.'

"At the time the complaint was filed the Primary election had already been held on August 8th and there was no other primary election to which Porter could have been certified as a candidate.

"Subsequently, the General Election has been held and Hesselbein, the Democratic nominee, was elected to the position and office of Alderman. Hesselbein is now holding that office. Any delay in presenting plaintiff's complaint has not been the fault of Hesselbein and there has been no fraud . . . Hesselbein now files a Motion to Dismiss, which is the matter under consideration.

"The Preferential Primary Law under which the July 25th preferential primary election was held is Act 238 of 1943. In the discussion concerning this 'motion to dismiss' it will be borne in mind that when Arkansas adopted the Primary Election Law in 1916 it did not com-

pletely divest the political parties of all supervision and control of the manner in which the party would select its nominees for elective positions; and that prior to the 1916 law, the party procedure both for elections and election contests were matters in which the party itself was all powerful. *Walls* v. *Brundidge,* 109 Ark. 250. The contest provisions of the statute were construed by the Arkansas Supreme Court not to extend to contests for delegates and committeemen. *Tuck* v. *Cotten,* 175 Ark. 409. The law has been amended to include those specific offices, but that holding of the court is here referred to in order to emphasize that the primary election law did not usurp the functions of the political party unless the function was specifically dealt with. In *Williamson* v. *Montgomery,* 185 Ark. 1129, the Court said:

" 'Where a political party makes a rule governing its procedure and in good faith interprets that rule, the court has no authority to substitute its interpretation for that of the officers of the party.'

It goes without argument that the nomination of a candidate is actually a Political Party Function.

"In the case at bar, the plaintiff, Mr. Porter, does not claim to be the nominee of the party. He does not claim the right to the office itself. His prayer is that he be declared 'one of the nominees of the Democratic Party for the Run-Off Primary.' The true situation can be better stated when it is said that Mr. Porter, at a time when it is impossible to do so, asks this court to declare him eligible to participate in a primary election that can never be held. Not only has the time for the general primary passed, but the general election has been held and the office itself has been filled. . . . Mr. Porter has not been a candidate in such a primary and he does not allege or claim that he is honestly the democratic nominee. He merely alleges that he should have been permitted to appear on the ballot in the general primary election. He did not formally make this contention until the filing of the complaint in this cause and that was after the general primary had been held. Furthermore, he took no steps to have the Democratic Party officials put his name on the

ballot. The usual election procedure had been followed and the party, in its usual way, had awarded the nomination to the one who had the majority of the votes.

"In the case of *Higgins* v. *Barnhill* (1951), 218 Ark. 466, where a candidate thought his name should go on the general primary ballot after having lost in the preferential primary, an application was made to the chancery court for a writ of mandamus. The application was refused and an appeal followed. The Arkansas Court, at page 467, said:

" ' . . . As to the jurisdiction of the chancery court, Ark. Stats. 33-101 provides: "The Circuit and Chancery Courts shall have power to hear and determine petitions for the writ of mandamus and prohibition and to issue such writs to all inferior courts, tribunals and officers in their respective jurisdictions."

" 'If appellant was entitled to have his name placed on the ballot, and the chairman and Secretary of the county democratic central committee refused to have his name printed thereon, then the chairman and secretary would be refusing to perform a ministerial duty and could be compelled by mandamus from the chancery court to carry out such duty . . . The question presented here is not moot because, if we fail to pass on the issue for the reason that at this late date the decisions of this court could avail the appellant nothing, it is possible that, by reason of the time element involved between the two primary elections and the time necessary to perfect an appeal to this court, the point involved could never be decided before becoming moot . . .'

"The Court finds that the laws of Arkansas regarding 'Contest' of a primary election are the only statutory enactments depriving the political party of the right to administer its own selection of nominees that can possibly be available to Mr. Porter as a basis to maintain the suit he has filed. And that brings us squarely to the question: 'Is this action a contest for a party nomination?' The evident answer is that it is not. At most, this is a belated attempt to assert that Porter should have been

permitted to be a candidate in the general primary election which has already been held. Mr. Porter does not attempt to say that he honestly won the democratic nomination. In the case of *Bohlinger* v. *Christian* (1934), 189 Ark. 839, the court used the following language:

" 'At the threshold of the case, however, appellant is met with the proposition that, before he can contest appellee's nomination, he must allege and show that he, himself, was entitled to that nomination . . .'

and at page 841 of the same case:

" '. . . In *Storey* v. *Looney*, 165 Ark. 455, this court said: ''The question necessarily presents itself in the beginning whether or not appellant is in an attitude to contest the certificate of nomination awarded to appellee . . . In order to make a contest for nomination, appellant must show that he is entitled to the nomination, himself, which he fails to do . . .'' '

"The object of the election laws is to permit a political party to nominate its candidate in an orderly way so that the party nominee may hold the office if he is elected in the general election. The enactment of the primary law did not completely usurp all the functions of the political party. The candidates in democratic primary elections are voluntarily seeking the party endorsement and nomination. They submit themselves to the machinery of the party in every way that has not been taken over by a specific statutory enactment. It is reasonable to suppose that the Legislature considered the party and the existing court procedure sufficient to take care of the problems that arise in the preferential primary. At least, we can safely say that the Legislature, with full knowledge of the possibility of just such a situation as the case at bar, saw fit to NOT provide statutory direction to insure that a disgruntled losing candidate could contest a preferential primary election when he does not claim to have honestly won the primary nomination.

"The object of the preferential primary election is not to select 'Nominees' to be candidates in the general primary election. Its object is to insure that the candidate

getting the nomination has received a majority of the votes cast rather than a plurality. Where there are three candidates, as in the case at bar, the political party is interested in selecting from the three the one who gets the majority of the votes. The preferential law was and is designed to get away from the old system by which a nomination could be won by a mere plurality.

"CONCLUSION. Since Mr. Porter does not allege that he was and is entitled to the political party nomination; since there is no allegation of the loss of a property right; since there is no practical remedy at this date; and since this is not a contest of a Democratic Party Nomination, the Complaint of the plaintiff should be and is dismissed at cost of the plaintiff.

"Paul X. Williams."